## ROSSMAN v. BLUNT.
### No. 8129.

Circuit Court of Appeals, Sixth Circuit.
June 28, 1939.

Benjamin Kleinstiver, of Jackson, Mich. (Elmer Kirkby and Whiting, Kleinstiver & Anderson, all of Jackson, Mich., on the brief), for appellant.

Frank L. Blackman, of Jackson, Mich. (Blackman & Blackman, of Jackson, Mich., on the brief), for appellee.

Before ALLEN, HAMILTON, and ARANT, Circuit Judges.

HAMILTON, Circuit Judge.

The appellant, receiver of the Union & Peoples National Bank & Trust Company of Jackson, Michigan, a national banking corporation, in liquidation, appeals from a decree of the District Court adjudging the appellee, Gilbert George Blunt, execu-tor of the estate of George Gibson, deceased, a preferred creditor to the extent of $3,664.07.

On January 26, 1933, the Alma State Savings Bank of Alma, Michigan, sent a draft for $4,250 to the Union & Peoples National Bank & Trust Company to be given to the appellee when he delivered to the bank a warranty deed to Raburn B. Smith and Inez Smith, together with an abstract of title of the property described in the deed, certified copy of Gibson's will, an order of the Probate Court approving the sale and showing the appointment of appellee as executor and also receipts showing the payment of delinquent taxes on the property.

On January 31, 1933, the Alma Bank modified its instructions to the Union Bank by authorizing it to pay to the Treasurer of Gratiot County, Michigan, $580 delinquent taxes. In order to obtain the money to pay the taxes appellee, Blunt, and the Union Bank indorsed the draft and on February 4, 1933, the bank deposited it in the Detroit Branch of the Federal Reserve Bank, Chicago, Illinois, together with 157 other items aggregating $68,794.57. It cleared through the Detroit Clearing House and on February 6, 1933, was credited to the account of the Union & Peoples Bank in the Federal Reserve Branch at Detroit and on this date the Union & Peoples Bank mailed to the County Treasurer its cashier's check for $585.89 in payment of the taxes and on February 7, 1933, received the Treasurer's receipt therefor.

The Union & Peoples Bank retained the difference and immediately wrote its cashier's draft for that amount in the following form:

"Union & Peoples National Bank
No. 44721
"Jackson, Mich., Feb. 4, 1933
"Pay to the Order of Union & Peoples Natl. Bk. or G. Blunt, $3,664.07.
U & P
Nat'l Bank $3664 and 07¢.
Cashiers Draft
"M. Biddlecome
"Asst. Cashier-Teller."

On February 11, 1933, appellee delivered to the bank the documents called for in the letter accompanying the original draft and on that date it executed and delivered to appellee the following receipt:

"Jackson, Mich., Feb. 11, 1933.
"Receiver of Gilbert Blunt, Exr. of George Gibson, Est. draft for $3,664.07 to

be released as soon as Alma State Savings Bank o. k. all papers sent it.

"Union & Peoples National Bank,
          "by R. W. McCutcheon."

On February 14, 1933, the Alma Bank approved the foregoing documents and the Union Bank forthwith delivered the draft to the appellee which he accepted under protest.

At the end of the banking day February 11, 1933, the bank closed and was not reopened. On the foregoing facts, the lower court found that title to the funds represented by the draft did not pass to the bank but its assets had been augmented by commingling and that they were traced into the hands of the appellant.

■ Bank accounts may be divided into three classes, (1) general; (2) special; (3) for special purposes. The first class loses its identity and becomes a part of the general assets of the bank and the depositor becomes a general creditor. In the second class the account is separated from the bank's general assets, title remaining in the depositor with the right to recover the identical deposit, the bank becoming bailee. In the third class the account constitutes a trust fund, is related to the first and second classes, but in some instances the rights of the parties are determined under different legal principles.

■ If the deposit is for a special purpose and there is an agreement, express or implied, between the bank and the depositor that it is not to be used otherwise by the bank, it holds it as a trustee, with power to transfer title to a bona fide purchaser, the proceeds belonging to the beneficiary or cestui que trust. Restatement of the Law of Trusts, Sections 5 and 12, pages 20 and 36.

·Under the above statement of the law, there is no question as to the character of the deposit here and the relationship created. It falls in the third class and the rights of the parties are determined by the law of trusts.

■ When appellee delivered to the bank in acceptable form the documents referred to in the letter accompanying the draft, it had the single duty to deliver him the draft, and when it closed its doors for business February 11, 1933, this had not been done. The bank lacked the authority to commingle the proceeds of the draft with its general assets without committing a breach of trust. Capital Nat. Bank v. First Nat.

Bank of Cadiz, 172 U.S. 425, 434, 19 S. Ct. 202, 43 L.Ed. 502. The fact that appellee indorsed the original draft to obtain sufficient funds to pay the delinquent taxes does not prove an intent by the parties to change the trust relationship into that of debtor and creditor. No reasonable inference can be drawn from the evidence that appellee intended to become a general depositor of the bank. Davis v. McNair, 5 Cir., 48 F.2d 494.

The original draft was delivered to the bank with explicit directions to apply the proceeds to pay for the land which was assented to by the officers of the bank and the engagement of the bank was to apply the fund for that purpose. A trust was thus created, the violation of which constituted a fraud by which the bank could not profit and its receiver is not entitled to the benefit. From the moment the bank converted the draft into money, it was bound to hold it and apply it solely to the purpose for which it was received. It was impressed with a trust and no change of it into any other credit or form could divest it of this characteristic so as to give the bank or its receiver any different or more valid claim in respect to it than the bank had before the conversion. Libby v. Hopkins, 104 U.S. 303, 310, 26 L.Ed. 769.

■■ There is seemingly a conflict of authority in cases where a deposit with a bank for a special purpose is impressed with a trust, different conclusions being reached in some instances on facts which appear undistinguishable. However, on closer analysis of the cases, there are certain factors present in one, not in the other, which make them dissimilar. The intention of the parties is the test to be applied. The primary question is whether they intended that the bank, pending the payment for which the money was delivered to it, should stand in the same position with respect to the funds deposited for the special purpose as it stood in respect to its other assets, with the right to mingle and control the funds with unqualified temporary ownership. In ascertaining the intent of the parties, the Court will construe the words used according to their general acceptation and in the light of the customs and usages of banking practices to which they relate.

Where known business usages prevail as to the subject matter of a contract, parties thereto usually proceed under a tacit assumption without reducing the terms to writing, being mutually understood. The

special particulars of their agreements are usually written. When the usages of the banking business are applied to the agreement of the parties here, it is clear appellee did not intend for the bank to have title to the proceeds of the draft.

Appellant urges on the Court that appellee was not entitled to a preference in any event because he failed to carry the burden of proof of definitely tracing into appellant's possession something of value which belonged to him, or the avails thereof, and that a mere showing that the bank before its closing wrongfully converted to its own use the proceeds of the draft, is insufficient to establish a preferred claim. Hoffman v. Rauch, 300 U.S. 255, 258, 57 S. Ct. 446, 81 L.Ed. 629.

The only evidence in the record supporting appellee's claim that his property came into the hands of the receiver is that on February 4, 1933, the bank received credit for $73,044.57 in the Detroit branch of the Federal Reserve Bank, a part of which was the proceeds of appellee's draft and the bank closed seven days later. The record is silent on the status of the account of the Union & Peoples Bank on any subsequent date.

■ Where money constituting a trust fund is traced in an original or substituted form into the funds which come into the hands of the receiver of an insolvent bank, it still retains that character although theretofore mingled with other assets. Brennan v. Tillinghast, 6 Cir., 201 F. 609.

■ The right of a cestui que trust to pursue and reclaim trust funds rests upon property right. His claim does not become preferred over general creditors of an insolvent bank on a mere showing of its nature and if it has been dissipated there is nothing left to which the trust may attach. If the means of ascertainment and identification fail, the trust falls. Board of Com'rs of Crawford County v. Strawn, 6 Cir., 157 F. 49, 15 L.R.A.,N.S., 1100.

■ A very short time elapsed between the receipt of the trust fund and the final closing of the bank which reduces the probability that the bank had paid out or dissipated it. Under such circumstances, the burden of going forward with the evidence shifts to the receiver to show that he had nothing of value out of the trust fund to which appellee could establish title.

The records of banks are ordinarily kept by its confidential agents and employees, the customers and the public generally not having access to them and on receivership, the receiver becomes their sole custodian.

■ The proof on behalf of appellee shows prima facie that the receiver's assets were augmented by the proceeds of the draft. Mammoth Oil Company v. United States, 275 U.S. 13, 14, 52, 48 S.Ct. 1, 72 L. Ed. 137. In such case, all of the evidence adducible upon the question being in the possession of the receiver and not easily attainable by the appellee, the burden shifts to him to show that his assets were not augmented by the proceeds of the draft. Selma, Rome & Dalton Railroad Company v. United States, 139 U.S. 560, 568, 11 S.Ct. 638, 35 L.Ed. 266. The burden of proof rested on the appellee to show that his property had been wrongfully mingled with the mass property of the bank, but under the peculiar facts of this case when that was done, the burden of going forward with the evidence shifted to the receiver. Smith v. Mottley, 6 Cir., 150 F. 266.

The decree of the District Court is affirmed.