## MANUFACTURERS' FINANCE CO. v. MARKS.

### No. 9642.

Circuit Court of Appeals, Sixth Circuit.

April 21, 1944.

522

J. M. Rosenfield, of Chicago, Ill. (Roth-
bart & Rosenfield, of Chicago, Ill., Metcalf,

Apperson & Crump, of Memphis, Tenn., J. M. Rosenfield, of Chicago, Ill., and Charles M. Crump, of Memphis, Tenn., on the brief), for appellant.

Sam P. Walker, of Memphis, Tenn., for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

The District Court, after report by a referee, held on petitions to review that the appellant had obtained a fraudulent preference by seizure of the assets of the Belmont Candy Company, bankrupt (hereinafter called the Candy Company), and entered a decree requiring restitution of numerous items.

Appellant attacks the decree primarily upon the ground that it is not sustained by substantial evidence. It also contends that the District Court erroneously allowed interest on the amount awarded to the Candy Company.

The case arises out of the following facts: On September 15, 1930, the Candy Company, a Tennessee corporation operating in Memphis, entered into a contract with the appellant, a Delaware corporation, for the sale of the Candy Company's accounts receivable. The contract in substance provided that upon receipt of such accounts acceptable to appellant, it would pay the Candy Company 77% of the face amount of the accounts in cash, less a service charge. The balance of 23% less a second charge referred to as interest and calculated by the District Court to amount to 20% of the amount advanced under the contract, was to be paid to the Candy Company as the accounts were collected and the proceeds forwarded to the appellant. On March 11, 1932, the original contract was modified; the percentage of advance payment was changed from 77% to 70% and the final payment from 23% to 30%. The parties continued to operate under the contract as amended until the latter part of June, 1932, when E. L. Bradley, one of appellant's traveling auditors, discovered that approximately $2,000 had been received by the Candy Company from debtors on previously assigned accounts and had been placed to the Candy Company's credit in the Union Planters National Bank and Trust Company of Memphis, instead of being remitted to the appellant, in compliance with the contract. At about this time the Candy Company had overdrawn its account at the Union Planters Bank approximately $1,400, and was in default on a $75,000 mortgage on its plant, held by the same bank. Practically the only unincumbered asset of the Candy Company was certain accounts receivable amounting to approximately $3,750, while the amount then owing unsecured creditors was estimated at $30,000.

R. T. Hamilton, assistant treasurer of the appellant, went to Memphis on June 28, 1932, and with Bradley conferred with the officers of the Candy Company. Hamilton demanded security for the $2,000 which had been misapplied, required that the $1,400 overdraft at the bank be covered, and as a prerequisite to further dealings, made additional requirements as to the conduct of the Candy Company's affairs. In consideration that the appellant would continue to purchase the accounts receivable and lend money thereon, a new verbal agreement was entered into. The Candy Company was to assign to the appellant accounts in the amount of $3,750, from which the $2,000 misappropriated was to be repaid and the overdraft was to be taken up. It was understood the terms of acceptance and payment for accounts were to be the same as before. Bradley was to be employed by the Candy Company at a salary of $350 per month, to receive $20,000 of the Candy Company's common stock, and to have control of its business. He was to have the only key to the mailbox, open all mail, countersign all checks, remit all checks to appellant, pass on all purchases of raw material, approve all payments to creditors, and have full charge of the Candy Company's books and records. The overdraft was paid, and the various terms of the verbal contract were performed in substance. Both parties operated under the verbal contract until October 6, 1932, when appellant notified the Candy Company that it would no longer handle its account, and shortly thereafter notified the debtors of the Candy Company that it held assignments of the company's accounts and that payments thereon should be made direct to appellant. The filing of a voluntary petition in bankruptcy and receivership followed on October 31, 1932.

The appellant filed a petition in which it asked that the receiver and trustee be ordered to turn over all money collected by them on the assigned accounts; that certain money collected by appellant under a

court order entered April 11, 1933, be awarded to it; that it be accorded priority payment of the amounts so collected, and that it be decreed title to its assigned accounts that remain uncollected. The receiver answered that the $431.30 which he had collected on the accounts had been paid over to the trustee. The trustee, in his answer, asserted that all assignments from July 1, 1932, through October 6, 1932, are void under § 67 of the Bankruptcy Act, 11 U.S.C.A. § 107, for the reason that a lien was given the appellant in contemplation of bankruptcy with the intent unlawfully to hinder, delay and defraud creditors. He asked that all accounts assigned to the appellant and all moneys collected by it be turned over to the trustee; that certain expenses of the appellant defrayed with funds of the Candy Company be ordered to be repaid; that the amount of Bradley's salary be repaid, and that a decree be entered in favor of the trustee for the total amount of $14,262.17 with interest. The referee found that the transfer of the accounts after July 1, 1932, constituted a fraudulent preference; that the appellant was not entitled to compensation, interest or service charges after that time, and disallowed traveling and other expenses collected by appellant from the Candy Company. He found that Bradley's salary had been wrongly charged to the Candy Company, and ordered that appellant pay to the trustee the amount of Bradley's salary during the period of his connection with the Candy Company at Memphis, together with all sums which it had collected on the accounts, assigned subsequent to July 1, 1932.

■ The District Court confirmed the referee's conclusion that the verbal agreement of July 1, 1932, constituted a new contract; that it was made in contemplation of insolvency, and constituted a fraudulent preference under the statute. The holding is attacked upon the ground that the factual premises on which it is based have no support in the evidence. The burden was on the trustee to establish every element of a preference (Canright v. General Finance Corp., 7 Cir., 123 F.2d 98; First National Bank of Negaunee v. Fox, 6 Cir., 11 F.2d 810), and this burden he has sustained.

■ The case is governed by the Bankruptcy Act as it existed in 1932. Title 11 U.S.C.A. § 107. The contract of July 1, 1932, was made within the four months period and established a lien on the Candy Company's assets in favor of the appellant. After July 1, every transfer of an account benefited and secured the appellant. While the officers of the Candy Company made this arrangement under coercion, they must be held to have intended the obvious consequences of their act; and knowing the Candy Company's insolvent condition, to transfer to appellant practically its only liquid assets and to give to appellant the entire control of its business would obviously hinder and delay its other creditors. Hertzmark v. Lynch, 1 Cir., 54 F.2d 38, 40, certiorari denied, 287 U.S. 605, 53 S.Ct. 10, 77 L.Ed. 526; Kimmerle v. Farr, 6 Cir., 189 F. 295, 300; In re Dorr, 9 Cir., 196 F. 292, 293, 296; Western Tie & Timber Co. v. Brown, 196 U.S. 502, 509, 25 S.Ct. 339, 49 L.Ed. 571.

■ On July 1 the Candy Company was indebted to the appellant in the sum of $12,214.20, theretofore advanced, and appellant reimbursed itself for this sum thereafter. The subsequent transfers thus secured an antecedent debt. The appellant was enabled by this arrangement to obtain full payment of its claims while other creditors received nothing. Between July 1 and October 31, $21,000 of new debts to creditors other than the appellant were incurred to enable the Candy Company to continue in business. The sole asset from which these new debts might have been paid was the accounts which were held by the appellant and converted into cash for its benefit. These facts established by uncontradicted evidence demonstrate that the appellant cannot avail itself of the provisions of § 67(d) of the Bankruptcy Act, for the lien established in its favor was in contemplation of bankruptcy, in fraud of the Act, and not in good faith.

■ The finding that the verbal contract was made with knowledge on appellant's part that the Candy Company was insolvent is amply supported by the evidence. While Hamilton and Bradley deny that they knew or had reasonable grounds to know of the insolvency, their denial is refuted not only by the testimony of Floyd, president of the Candy Company, that Hamilton stated that the company was "hopelessly insolvent," but by the conceded facts and the inferences properly to be drawn therefrom. On June 30, 1932, the Candy Company could not meet its current obligations. It failed to remit $2,000 due to the appellant, had a substantial overdraft at the bank, and had some $30,000 unpaid and unsecured debts.

Hamilton, an experienced accountant, fully examined the affairs of the Candy Company on his visit to Memphis on June 28, 1932, and he was advised to the fullest extent by Bradley as to the financial condition of the company.

Hamilton denies that he required the Candy Company to give Bradley a position or stock in the corporation, or any dominant power over the business, and Bradley supports him in this denial; but $20,000 worth of stock belonging partly to Floyd, president, and partly to Betty, vice-president of the Candy Company, was transferred to Bradley July 5, 1932, and Bradley was given complete and despotic control of the corporation. It is inconceivable that men like Floyd and Betty, who had given many years of service to this corporation, would agree that all incoming checks be remitted to appellant and would employ Bradley, a man totally inexperienced in the business, give him $20,000 worth of stock, a salary almost equal to their own, and complete power over all purchases and expenditures by assenting to a requirement that his signature be placed on all checks, except under pressure or threat of immediate suspension. The Candy Company could not secure cash except through the appellant, and it accepted Bradley because of that fact and placed him in complete control of the company's activities.

■ Bradley at all times worked primarily for appellant. He telephoned Hamilton in Chicago, frequently, and gave the fullest information as to the Candy Company's affairs. He disclosed information and discussed the problems of the Candy Company, not with its officers, but with the appellant. The District Court found, and there is evidence to support the conclusion, that Bradley had a secret arrangement with Hamilton as to the affairs of the Candy Company.

Bradley reported regularly to Hamilton the amount necessary to cover checks drawn by the Candy Company in Memphis, and the appellant frequently remitted this amount by wire. Sometimes the amount needed was greater than the amount due to the Candy Company on that particular day, in which case the appellant made up the deficit by withdrawing the requisite amount from the reserve account. Often more was due the Candy Company from the purchases of the accounts than was remitted to Memphis, and the balance was deposited in the reserve account.

After July 1, 1932, the appellant completely ignored its obligations as to payment. Of 81 transactions after this date, represented by the settlement sheets placed in evidence, only six show that remittances were made under the contract. In the other transactions a substantial part of the funds due the Candy Company were deposited in the reserve account and not remitted at that time. The ledger sheets submitted by appellant do not reveal satisfactorily what became of the various sums in this reserve account nor do they disclose the exact state of the account between the parties. A telegram sent by Hamilton to Bradley on October 19, 1932, says: "reserve eighty three hundred seventy three and forty eight * * *," but the ledger shows no such figure in the reserve account.

The largest item charged the appellant by the District Court is $12,214.20, a sum which was owing the appellant for advancements made to the Candy Company on purchased accounts prior to June 30, 1932. The District Court held that the appellant's actions prior to June 30, 1932, were bona fide in every respect, the amounts advanced and the marginal credit obtained thereby being for a present consideration and in due course of business, but that the appellant commingled the accounts which it obtained before June 30 with the accounts obtained after that date and paid itself from the commingled accounts not only the indebtedness accruing after June 30, but the indebtedness of $12,214.20 due on that date. The court held that this conduct enabled the appellant to effect payment of its debt in full from transfers made while the Candy Company was insolvent and within four months of bankruptcy, and to obtain a greater percentage of its debt than any other creditors of the same class. The District Court therefore gave judgment in favor of the trustee for this amount, but gave leave to the appellant to file a claim as common creditor against the estate for this sum.

■ The appellant contends that if this decree for the appellee stands, exclusive of any question of interest, the Candy Company and its trustee will receive over $15,000 more than 100% of the face amount of all accounts receivable in question. With reference to certain items included in the judgment, this contention plainly has no merit. The amount of Bradley's salary, $1,050, and the item of $502.03, expenses

charged against the Candy Company for stamps, telephone calls, telegrams, and expenses of various persons which were properly chargeable to the appellant only, clearly cannot be figured against the amount of the accounts receivable.

As to the remaining amount, some $13,500, we think that appellant's contention also must be overruled. Appellant arrives at its computation by figuring that the total of accounts on hand June 30, 1932, plus those purchased thereafter, amounts to $89,700.32; that uncollected accounts in the aggregate of $7,900.51 are outstanding and that the gross amount of all accounts receivable involved herein is $81,799.81. It states that the total cash paid on the accounts to the Candy Company and its trustee aggregates $79,872.50. The principal item in this amount is $64,847.47, which appellant contends was found by the District Court to have been paid the Candy Company by appellant subsequent to June 30, 1932. The District Court makes no such finding, but states that during this period the appellant "purportedly advanced to bankrupt, or charged bankrupt's reserve account with wire transfers, interest and compensation in the sum of $34,056.02, making a total of $64,847.47." In speaking of the insistence of Hamilton and Bradley that after July 1, 1932, the appellant paid the Candy Company approximately $64,847.47, representing over 70% of the face amount of all accounts purportedly purchased by it during July, August, September and October, less the handling charge, the District Court says "that is not true and the record does not bear it out." The checks which the appellant claims it sent to the Candy Company in payment of the balances due over and above the amount of the wire transfers were not produced. The District Court points out that if appellant had complied with its contract it would have sent the Candy Company 70% of the face amount of its accounts received during the four months in question (which is admitted to be $71,067.47), namely, $49,747.22 less $142.15 handling charge, or $49,605.07. But the court states that appellant's records show that during this period it remitted to the Candy Company $29,782.72, or $19,822.35 less than it should have sent under the contract. The court concludes that the amounts claimed by appellant to have been advanced to the Candy Company could only have come from the reserve account and from payments made by debtors of the 30%

margin of accounts held by appellant in which it had no rights except to apply them to the payment of any amounts it had advanced on the purchase of accounts on a 70% basis in the event there was a breach of warranty on the part of the Candy Company. The court held that this did not constitute an advancement by appellant of its own funds, and therefore ordered reimbursement to the trustee of $12,214.20, with right to file a general claim for this amount.

The District Court found that the reserve account was "arbitrarily and fraudulently set up," and this finding is supported by clear and convincing evidence. Neither Floyd, Betty, nor the bookkeeper was ever informed of its existence. Appellant contends that the reserve account is a mere bookkeeping device to facilitate the payments due after the 30% payment has been collected; and according to Hamilton's testimony, the reserve is made up mainly of this final payment. But this statement is contradicted by the record and is so glaringly incorrect that it seriously reflects upon the credibility of Hamilton.

As far as the ledger sheets show, the reserve account did not exist until after Hamilton's visit to Memphis June 28, 1932. Large sums of money due the Candy Company under the contract were listed in the reserve account; and a study of appellant's ledger sheets and the settlement accounts which it sent to the Candy Company lead to the inevitable conclusion that at certain times the funds in the reserve account were manipulated solely for the benefit of the appellant. 81 settlement accounts were introduced in evidence which show that the appellant repeatedly made payments during the period from July 1 to October 6, 1932, into the reserve account of all or part of the 70% payment which was due the Candy Company under the contract, "upon acceptance of such accounts." The settlement account was a letter signed by the appellant and forwarded to the Candy Company. It is entitled to particular credence because it represents a statement mutually accepted. The settlement account identifies the particular items purchased as shown by a certificate of indebtedness and computes the amount of accounts at 100%, the 30% to be paid less deductions and overpayment as the accounts were paid appellant, and then states, "Amount due you 70%," together with the appropriate figure. In numerous instances the settlement accounts show a wire transfer of funds to the credit of the

Candy Company at the Union Planters Bank. According to the settlement accounts, over $8,000 in 70% payments was due in the period from July 27 to August 17, inclusive, on 20 separate certificates of indebtedness. This entire sum was credited to the reserve, no remittance being made at that time from these items to the Candy Company. A similar grouping occurred from August 20, 1932, to August 29, 1932, covering seven certificates of indebtedness, and aggregating approximately $3,600. Again the entire amount of these items was credited to the reserve. As shown by the summary of the settlement accounts a total of $24,177.78 of the 70% payments during this period was listed in the service account, the full amount of which was due the Candy Company at the time of credit. After making deduction of the amounts drawn from the reserve to make up payments to the Candy Company, some $16,000 was wrongfully withheld from the Candy Company during this period, at least for a considerable number of days.

The ledger sheets include many items not covered by the settlement accounts; but the appellant has not seen fit to question the authenticity of the settlement accounts, nor does it charge that other settlement accounts were sent to the Candy Company but not introduced in evidence.

The figures presented with reference to the reserve account, its source and disposition, and with reference to other items, exhibit unexplained gaps and discrepancies. The District Court found that it is doubtful whether all of the entries on the ledger are bona fide, since they were known only to Hamilton and Bradley, and are not substantiated in any way. As pointed out by the District Court, four large items in the early part of October, aggregating over $4,000, claimed to have been paid by appellant to the Candy Company, are not listed in the settlement accounts. The District Court held that these particular payments were not proved.

The burden was on the appellant to establish its contentions as to the amounts of payments to the Candy Company and the legitimacy of its reimbursements to itself subsequent to June 30, 1932. The payment of $12,214.20 owing to appellant on July 1, 1932, is legitimate only if it is shown to have been paid from the proceeds of accounts transferred to the appellant prior to July 1, 1932. On that date appellant entered into a contract con-

demned by § 67(e) of the Bankruptcy Act. Appellant alone could have separated the accounts so as to show from what source collections were received and from what source reimbursements were made. Since the reserve account was created and maintained by appellant, it was its duty to produce all figures with reference to it. Cliett v. Scott, 5 Cir., 102 F.2d 725. All the evidence on this question was in appellant's possession and was not easily obtainable by the trustee. Hence the burden shifted to appellant to prove all relevant facts with reference thereto. Rossman v. Blunt, 6 Cir., 104 F.2d 877, 880; Selma, Rome & Dalton R. Co. v. United States, 139 U.S. 560, 568, 11 S.Ct. 638, 35 L.Ed. 266; Miller v. Lykes Bros.-Ripley S. S. Co., Inc., 5 Cir., 98 F. 2d 185, certiorari denied, 305 U.S. 641, 59 S.Ct. 150, 83 L.Ed. 413; Cliett v. Scott, supra.

As to the propriety of the reimbursement of the $12,214.20, while the sale of the accounts is identified by number of the so-called certificates, neither collections nor reimbursements are identified by certificate number, or in any other way. All proceeds from the accounts were commingled on the books by the appellant. Moreover, under the new contract all of the affairs of the Candy Company were dominated by appellant, and peculiarly within its knowledge. Its representative, Bradley, received all checks addressed to the Candy Company and all of the accounts were within its exclusive custody. Appellant could have introduced the checks which it claims were forwarded to the Candy Company to cover any balance due under the contract, but they are entirely missing from this record. It could have produced other settlement accounts, if any, in its possession in addition to those introduced by the trustee; but it has not done so. We are unable to conclude, under this state of the record, that $64,847.47 was paid to the Candy Company subsequent to June 30, 1932, as contended. Since appellant commingled the accounts, and has not produced any other settlement accounts than those in evidence, collection of the $12,214.20, which concededly constituted the investment of the appellant in the accounts on June 30, 1932, is not shown to have been made from accounts purchased before June 30, 1932.

In view of this unsatisfactory condition of the books which, as correctly found by the District Court, is entirely the fault of the appellant, the District Court

did not err in rendering the judgment attacked. The appellant was given a general claim for sums aggregating $12,662.82. This included the item of $12,214.20, and another item of $448.62, representing a balance secured by worthless accounts which were collected from other accounts during insolvency and within the four months period. The general claim for these items is all to which appellant is entitled.

The following items were properly charged to appellant: The sum of $502.03 charged to the Candy Company by appellant for stamps, telephone calls, telegrams, and certain traveling and other expenses, none of which were incurred in the business of the Candy Company; $1,-050, the amount of Bradley's salary during this period, upon the ground that his services were expended primarily for the appellant and were of no value to the Candy Company; all compensation accrued to appellant after bankruptcy, amounting to $734.41, upon the ground that appellant performed no service for the Candy Company after that date; an item of $448.62 which was due on one account transferred to another, and reimbursed after July 1, 1932, thus enabling the appellant to pay itself the balance in full; the sum of $1,941.32 collected by appellant on the accounts since April 11, 1933, and $48.22, representing the difference between the total amount of accounts purchased by it less the amount on hand on April 1, 1933, and the total amount of advancements and remittances made to the Candy Company.

We deem it unnecessary to detail the transactions at greater length, in view of the careful and detailed findings and conclusions of the referee and the District Court. The controlling question as to the item of $12,214.20, for which the District Court gave judgment against the appellant, is the source of the collections made between June 30, 1932, and October 6, 1932, from which appellant reimbursed itself for this sum. Even if, as indicated by the monthly accounts, and found by the referee, some $5,000 more was collected during that period than the face amount of the accounts assigned within the period, the fact still remains that appellant has produced no evidence to show that the $12,214.20 was paid back out of the proceeds of accounts assigned prior to June 30, 1932.

Since the appellant has had the use of substantial sums belonging to the bankrupt during the period of this litigation, the District Court did not err in allowing interest at six per cent.

The decree is affirmed.