**PHILLIPS PETROLEUM CO. v. BYNUM.**
No. 11239.

Circuit Court of Appeals, Fifth Circuit.
Feb. 1, 1946.

Rehearing Denied March 11, 1946.

Warren M. Sparks and E. H. Foster, both of Amarillo, Tex., and Don Emery, Rayburn L. Foster, and R. B. F. Hummer, all of Bartlesville, Okl., and Charles B. Cochran, of Oklahoma City, Okl., for appellant.

D. H. Culton, of Amarillo, Tex., for appellees.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

This is another case involving the price that should be paid the royalty owner for gas taken from a well in the Panhandle Field of Texas. The royalty provisions in Plaintiffs' contract[1] are identical with those construed in Shamrock Oil & Gas Corporation v. Coffee, 5 Cir., 140 F.2d 409. The only substantial difference between this and the Shamrock case is that in the latter it was admitted that there existed in the field a market price for the gas, while in the present case the plaintiffs say, and insist that they have proven, that no market price for their gas had ever been established, by actual and comparable sales, in Moore County, Tex., where the Bynum sweet gas well is located.

Plaintiffs say that, having shown an absence of such a market price in Moore County, Tex., they were not required to show an absence of market price throughout the entire Panhandle Field, wherein their well is situated but were then entitled to prove, and did prove, the fair and reasonable value of the gas taken and used by defendant, off the premises and at its several plants in the extraction of gasoline, etc.—all of which they say was in conformity to the applicable holdings of this Court.[2]

Defendant says that even if it were to concede, which it does not, that plaintiffs had shown the absence of a market price for the gas at the well in Moore County, Tex., this would not suffice because the proof of the existence of a market price is not limited to, nor circumscribed by,

McCORD, Circuit Judge, dissenting.

1 "The royalties reserved by lessor, and which shall be paid by lessee are * * * (b) on gas produced from said land and sold or used off the land or in the manufacture of gasoline, including casinghead gas, *the market price at the well of one-eighth of the gas so sold or used*, provided that if and when lessee shall sell gas at the wells, lessor's royalty thereon shall be one-eighth of the amount realized from such sale." (Emphasis added.)

2 Shamrock Oil & Gas Corporation v. Coffee, 2 Cir., 140 F.2d 409; Sartor v. United Gas Pub. Service Co., 5 Cir., 84 F.2d 436, 437; Phillips v. Oschsner, 5 Cir., 146 F.2d 138; Phillips v. Record, 5 Cir., 146 F.2d 485.

county lines; that the test is whether or not there was a market price established by actual sales in the Panhandle gas field.

We say that it is not a matter of geography nor of county lines nor of the area embraced in a particular field, but that it is a matter of business, of economics, of supply and demand, and of the existence and availability of a market.

The plaintiffs, perforce, must concede that there is a market for their gas, for if they had no market nor outlet it would be without either actual or market value. Admittedly, the gas here has an outlet to the gasoline plants of the defendant and without doubt the gas from the Bynum Well, which is transported by pipe lines to five or six of the defendant's gas reduction plants, could readily be delivered to other producers of gasoline from such gas. For the plaintiffs to argue against its availability to market is for the plaintiffs to decry its value—both market and intrinsic. Plaintiffs cannot, and do not, say that there is no demand for their gas. Such a claim would defeat their prime purpose in attempting to show a higher value for their gas than is being paid. The question, therefore, is not what happens in Moore County, but whether or not there have been recent, substantial, and comparable sales of like gas to gasoline extracting plants, carbon black plants, and the like, from wells in the area whose availability for marketing is reasonably or substantially similar to that of the gas here involved. For instance, if Shamrock Oil & Gas Corporation customarily buys gas from wells in that field where the gas and availability of such wells are similar, or comparable, to that of the well of the plaintiffs, then the prices paid by Shamrock would be competent and relevant evidence, not only of the existence of a market price, but as to value, market or intrinsic. Do the Skelly Oil Company, Shamrock, Magnolia, Shell, and any other companies engaged in that area in the extraction of gasoline and other by-products from gas, customarily buy such gas from wells that are similar in location and availability, and, if so, what price do they pay? In the absence of available evidence as to market price at the well it would seem appropriate and relevant to inquire as to the market price paid at the plants of gasoline extractors, after deducting the cost of transportation. See Sartor v. United Gas Pub. Service Co., 5 Cir., 84 F.2d 437.

Certain features of cases like this that cannot be overlooked are: (1) That where the contract requires the payment of market price at the well the Court cannot make a new contract. (2) The Court must undertake to see that the contract is carried out if reasonably possible. (3) Neither the Court nor the litigants can get away from the fact that the contract here calls for the payment of market price at the well and the fact that the ascertainment of market price may be troublesome, or that the contract is improvident, is not a web of the Court's weaving. The Court must hold the parties to market price at the well if it is possible to ascertain market price. Neither of the parties nor the Court has the right to exercise any option in the matter. (4) The only theory upon which the Court can allow a recovery for the reasonable value of the gas would be because of proof that it was impossible to ascertain market price and, therefore, impossible to carry out the agreement of the parties to pay and to receive market price. Upon it being made clearly to appear that the measure of compensation provided in the contract cannot be applied, the Court, in order to prevent injustice, will require the lessee to pay the reasonable value of such part of lessor's property as has been taken theretofore.

The Courts must also be realistic in considering the question of market price. Daily sales and daily quotations, as in the case of cotton, wheat, or corn, are not essential to an ascertainment of market price, although this would furnish the answer if there were such daily sales. Sartor v. United Gas & Pub. Ser. Co., supra. The nature of the commodity involved renders it unnecessary that business connected with it be transacted on the basis of daily market fluctuations, and when seeking market value of gas at the well we cannot require the application of rules of daily sales and daily quotations when there is no showing that such sales and quotations occur.

Another feature of this litigation which seems to have appeared in every other similar case from that area and which causes confusion to the courts and to the litigants is the relevancy and competency of evidence as to prices and royalties paid by interstate pipe line companies dealing in gas for fuel and heating purposes. In this case, as in every similar case coming before this Court in recent years from the Panhandle Field of Texas, it is con-

ceded that such pipe line companies do not buy gas at the well, and that they do not now, and never have, furnished a market for gas of any other person situated similarly to the plaintiffs. It is without dispute that most of such pipe line companies either have their own gas wells or have long-time contracts embracing many thousands of acres of land extending over many years, requiring delivery of gas by the seller into their own pipe lines under a certain prescribed pressure, or that they have large areas communitized so that the expense of delayed drilling rentals, or of drilling numerous wells and off-set wells, is eliminated.[3] Moreover, such pipe line companies are subject to rate-fixing by governmental agencies, with the result that, ordinarily, the more their gas costs the higher their rates will be. The proportion that they pay the owner of a ⅛ royalty will likely be reflected in the rate that they receive in compensation for the ⅞ which they own. These, and other, considerations make sales to such pipe lines noncomparable, irrelevant, and incompetent in an endeavor to ascertain either market or actual value of gas sold to purchasers for gasoline extraction purposes only. The admitted fact that there is no market from the pipe line companies for plaintiffs' gas clearly demonstrates the irrelevancy and incompetency of interstate pipe line prices to the question of market price or value of plaintiffs' gas.

Notwithstanding the fact that plaintiffs proved and admitted that there was no market for their gas from the pipe line companies, nevertheless, they put in the evidence of numerous witnesses, over the objections of defendant, to prove that such pipe line companies pay from 3½¢ to 4½¢ per thousand cubic feet. This testimony was not competent and the Court ought not to have admitted it.

Under the evidence in this case the only substantial market for the plaintiffs' gas is that afforded by plants that extract gasoline and other products from the gas, and in the absence of proof of an unlawful combination between such producers for suppression of the market price, the test is what do such producers pay for gas similar in quantity, quality, and availability to market? With the exception of the incompetent testimony as to the prices paid by the interstate pipe line companies dealing in gas for heating and fuel purposes, there remains no substantial evidence in the record to support the jury's verdict of 4¢ per thousand cubic feet.

We have not looked with approval upon the action of the defendant in sitting back and offering no proof to aid the Court in the solution of this question, and in effect saying to its lessor: "We have taken and used, as we have seen fit, your ⅛ part of the gas. Now it's up to you to prove, if you can, what we and other manufacturers pay other people, similarly situated, for their gas." We have searched for some principle of law that would permit us to announce that when the defendant takes all the gas from the well and makes such disposition of it as best suits its purpose under a contract which does not state a definite sum to be paid for such gas, there arose either a fiduciary relation or a relation as principal and agent which would place the lessee under the duty to keep his principal fully informed and to disclose all facts that came to his knowledge and to fully and faithfully account to the lessor. But in view of the Texas law that the royalty owner has no title even to the ⅛ part of the gas, and that only the contractual relation of debtor and creditor exists, we are unable to fasten the obligation to make a full disclosure where it really ought to be. We are obliged to hold that the burden is on the plaintiffs to show first that there was no market price at the well for the gas in question before they should be permitted to introduce evidence as to the actual or reasonable value thereof. Before receiving evidence on the question of actual or intrinsic value, it would seem appropriate that the Court should follow Rule 49(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and require a special verdict of the jury on the issue as to whether or not there existed a market price for the gas. If the jury should answer in the affirmative, then there would arise no necessity for going into the question of actual value and thereby cluttering up the record with useless and irrelevant evidence.

---

[3] A highly informative note on this phase of the case is found as a footnote to the opinion in Phillips Pet. Co. v. Oschsner, 5 Cir., 146 F.2d 138. See also footnote to Thompson v. Consolidated Gas Co., 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510, or the footnote to same case in D.C., 14 F.Supp. 318.

■ The charge of the Court on the question of market price described a market characterized by daily sales. Such is not appropriate in the absence of a showing that such a market existed in the business in question. A market price on a 1,200-pound, sound, six-year-old mule that has never been sold can be established if in the community there have been recent sales of other 1,200-pound, sound, six-year-old mules.

Reversed and remanded for further proceedings not inconsistent herewith.

McCORD, Circuit Judge (dissenting).

The plaintiffs here, finding no market price for the gas at the well in question, went out and sought until they found the fair market value of the gas as best they could in the field and elsewhere, and thereupon brought in such evidence to the court and presented it to the jury. The law is well settled, I think, to the effect that where the plaintiffs have made out a prima facie case, and much more is made out here, the burden thereupon shifts to the defendant to go forward with the evidence. Certainly this is true where the defendant, because of the lease contract, has all the facts in its possession and owes a duty to the plaintiffs to disclose honestly such facts. Selma, Rome & Dalton R. R. Co. v. United States, 139 U.S. 560, 561-568, 11 S.Ct. 638, 35 L.Ed. 266; Miller v. Lykes Bros.-Ripley S. S. Co., 5 Cir., 98 F.2d 185; Manufacturers' Finance Co. v. Marks, 6 Cir., 142 F.2d 521, 527.

The defendant knew accurately the "fair market value", the "fair value", and the "market price" of the gas; it also knew how much gas had been taken from the well, the kind of gas taken, when taken, where taken, and the actual cost price for piping the gas to where it was delivered to the plants of defendant and there used and the refuse afterwards sold to others. What is important here is that the defendant refused to go forward with the evidence after the plaintiffs had rested their case. The defendant declined to offer any evidence. It also rested its case. It in effect said to the court and to the jury that "we know all this and more about the gas in question; we have taken over the one-eighth royalty gas, the proceeds from which belongs to the plaintiffs and we have used it and sold it, but you find out, if you can, what became of it and its fair market value." Thereupon, the court submitted the issues to the jury for their determination and they returned a verdict for the plaintiffs.

This defendant now comes forward and presents to the court several intricate and difficult briefs, like those in the case of Phillips Petroleum Co. v. Johnson, 5 Cir., 155 F.2d 185, which bitterly complain of the entire court proceedings in the two cases. These briefs compare favorably with the lamentations of Jeremiah, but when we come to find out that in neither case did this defendant offer one scintilla of evidence, these briefs fall of their own sheer weight, unless one treats them as evidence.

Let us examine the cases which this court has heard heretofore, and in which "market value," "fair market value" and the "fair value" are discussed, and compare them with the issues here involved: Shamrock Oil & Gas Corporation v. Coffee, reversed and remanded, 5 Cir., 140 F.2d 409; Phillips Petroleum Co. v. Oschsner, reversed and remanded, 5 Cir., 146 F.2d 138; Phillips Petroleum Co. v. Record, reversed and remanded, 5 Cir., 146 F.2d 486; Arkansas Natural Gas Co. v. Sartor (Louisiana case), 5 Cir., 78 F.2d 924. This case has been before this court at least six times and was finally affirmed January 23, 1946, 152 F.2d 758.

I do not contend that decisions in these cases are wrong. I desire only to point out that our opinions as to the evidence necessary to disclose fair market value, which is the important and controlling issue in nearly every one of these cases, seem to have been confusing and misleading. Lawyers and counselors have not been able to use them as a guide and thereby escape reversal when they come to us on appeal.

We are not dealing here with fiduciary relations, with trusts, or with principal and agent. Like all the cases adverted to, it involves a contract and was tried at law, and it was and is a duty of the law court to call upon the defendant to disclose fully, fairly and honestly those matters and facts which are peculiarly within its knowledge and which it gained by reason of the lease contract. When the defendant refused to offer such evidence the plaintiffs were entitled to a directed verdict.

This case, like the case of Phillips Petroleum Co. v. Johnson, 5 Cir., 155 F.2d 185, must now go back for another and dif-

ficult trial with the issues, if possible, I submit, more nearly cluttered up than they have ever been before. After paying all the costs, the plaintiffs must again try to prove the "market price" of the gas "at the mouth of the well," when, as a matter of fact, there is no such market price, and failing in this, then go to the defendant and beg it to kindly inform as to the fair market value of one-eighth royalty gas it has taken over, the net proceeds of which belong to the plaintiffs. Moreover, this opinion and also the opinion in the case of Phillips Petroleum Co. v. Johnson further complicate the issues by bringing in the *equity* question and "implied, constructing and resulting trusts," etc., and they differ from each other in more than one particular, and also from the opinions in the other cases just adverted to.

The life of these Panhandle Gas Field wells is probably twenty years, and at the expiration of that time it may be that the fair market value of the gas may be found and established, and also the amount owing may be ascertained, to the end that the *heirs of the now owners* of these lands on which the wells are located may finally secure a settlement.

The admonition of the elders that, "Judges and Courts should be the hope of all who suffer and the dread of all who wrong," seems to have gone into the discard.

The judgment should be affirmed.

### On Petition for Rehearing.

 We call attention to a material difference in the utilization of gas in the Richland Field of Louisiana, as discussed in the Sartor cases, and the utilization of plaintiffs' gas. It is a matter of common knowledge that in the Richland Field such gas was readily marketable to pipe line companies. In the Panhandle Field of Texas only a portion of the gas produced is taken by pipe lines, and it is conceded by both parties that there is no market for plaintiffs' gas to the pipe line companies. Therefore, the prices paid by pipe line companies in the Panhandle Field can have no bearing in fixing either the market price or the actual value of plaintiffs' gas, and to that extent the Louisiana cases are not applicable here.

In substance, this Court holds:

(1) The burden of proof is on the plaintiffs.

(2) The contract between the parties cannot be ignored by the Court unless it were illegal or impossible of performance.

(3) Market price of gas is determined by sales of gas, comparable in time, quantity, quality, and availability to marketing outlets.

(4) The proof by plaintiffs of no comparable sales in Moore County is not proof that there were no comparable sales by which market price could be shown.

(5) County boundaries are not a factor in making proof of the existence or non-existence of market price in the Panhandle Field.

(6) Since plaintiffs' gas cannot be sold to pipe lines, and since numerous factors enter into the price or value of pipe line gas that generally do not enter into the price or value of non-pipe line gas in the Panhandle Field, it was error to admit evidence of the prices paid by pipe line companies on the question either of market price or actual value.

(7) The absence of daily sales of gas on a fluctuating or competitive market cannot annul the provisions of the contract requiring payment for royalty gas at the market price at the well, if there was, in actuality, a market price created by sales that are comparable in time, quantity, quality, and availability to marketing outlets.

(8) The term "market price at the well" cannot mean market price at the Bynum Well, but it means the price which similar gas brings at the mouth of wells generally in the field. To hold otherwise would render the term meaningless, for obviously none but the lessee has taken, or can take under the present contract, gas from the mouth of that well, and it was never the intention of the parties to allow the lessee to fix the price by the price that it fixed. It could not set its own price as the standard of right, for it was intended that it should be required to pay as much as other similar purchasers were paying in comparable purchases of similar gas.

(9) Actual value or intrinsic value may not be shown unless it first be shown that there was no market price established by comparable sales.

The petition for rehearing is denied.

McCORD, Circuit Judge, dissents.