PENNZOIL PRODUCING COMPANY, Shell Oil Company, United Gas Pipe Line Company, Petitioners,

v.

FEDERAL POWER COMMISSION, Respondent.

Nos. 76–1626, 76–1831 and 76–2128.

United States Court of Appeals, Fifth Circuit.

June 6, 1977.

Rehearing Denied Sept. 1, 1977.
See 558 F.2d 816.

Jeron Stevens, Stephen M. Hackerman, Houston, Tex., A. Duncan Gray, Jr., Gen. Atty., M. Diane Barber, Atty., Pennzoil Producing Co., Houston, Tex., for petitioner Pennzoil Producing Co.

Paul W. Wright, Martin N. Erck, Houston, Tex., amicus curiae, Exxon Corp.

Harry E. Barsh, Jr., Washington, D.C., for intervenor State of Louisiana.

Allan Abbot Tuttle, Sol., Drexel D. Journey, Gen. Counsel, John H. Burnes, Jr., Atty., F.P.C., Washington, D.C., for respondent.

Roy L. Merrill, Houston, Tex., for Mobil Oil Corp.

Thomas G. Johnson, William G. Riddoch, Dan A. Bruce, Houston, Tex., for petitioner Shell Oil Co.

William B. Cassin, Gen. Counsel, United Gas Pipe Line Co., Houston, Tex., Phillip D. Endom, Assoc. Gen. Counsel, Lee McCarthy Huber, Atty., Donald R. Arnett, Houston, Tex., for petitioner United Gas Pipe Line Co., No. 76–2128.

Before CLARK, RONEY and TJOFLAT, Circuit Judges.

RONEY, Circuit Judge:

Caught in the squeeze between the regulated price of its gas, which price included royalty costs at the interstate price, and the claims of landowners for increased royalty payments based on higher intrastate rates, the gas producers petitioned the Federal Power Commission for relief. Two alternatives were given the Commission: *first*, let the producers' interstate price be increased by the amount of increased royalty the producers will have to pay as determined by state litigation or settlement of pending lawsuits; or, *second*, let the producers "abandon" the royalty portion of gas produced so that gas can be delivered to the royalty owner in kind, unburdened by the restrictive interstate price.

■ As to the first alternative, the Federal Power Commission failed to realize it had the authority to grant relief. As to the second, the Federal Power Commission misunderstood the law as it has now been defined in *Southland Royalty Co. v. FPC*, 543 F.2d 1134 (5 Cir. 1976). We reverse and remand for further consideration.

Due to the gross disparity between the higher unregulated prices of intrastate gas sales and the lower regulated prices of interstate sales,[1] lessors, whose royalty payments are determined by the "market value" or the "market price" of the gas, have brought numerous suits against the interstate producers-lessees claiming royalty payments based on rates higher than those prescribed by the Federal Power Commission.[2] Many of these long-term leases were entered into long before this disparity in prices arose, and some even before the Commission began regulating rates for interstate gas sales.[3] Thus, neither lessor nor lessee anticipated the problem that would arise over the nondefined terms in the leases: "market value" and "market price."

1. *See Southland Royalty Co. v. FPC*, 543 F.2d 1134 (5th Cir. 1976).

2. *See, e. g., Phillips Petroleum Co. v. Bynum*, 155 F.2d 196 (5th Cir.), *cert. denied*, 329 U.S. 714, 67 S.Ct. 44, 91 L.Ed. 620 (1946); *Foster v. Atlantic Refining Co.*, 329 F.2d 485 (5th Cir. 1964); *Texas Oil & Gas Corp. v. Vela*, 429 S.W.2d 866 (Tex.1968).

3. Pennzoil Producing Company and Shell Oil Company sell in interstate commerce natural gas produced from Louisiana acreage leased from Williams, Inc. Pennzoil operates under a 1934 lease, while Shell operates under a 1934 and a 1952 lease. The 1934 lease provides for royalty payments equal to one-eighth of the value of the gas produced, calculated at the "market rate" prevailing at the well. The 1952 lease contains a similar provision, requiring royalty payments equal to one-fourth of the value of the gas produced, calculated at the "market price" prevailing at the well.

In a lawsuit filed on May 24, 1974, and currently pending in Louisiana state court,[4] a lessor asserted a royalty claim based on intrastate prices for natural gas, which greatly exceed the ceiling rates established by the FPC for interstate sales. After Williams, Inc. demanded by letter payment of royalties based on intrastate rates, Shell and Pennzoil brought the lawsuit seeking a judgment declaring that their royalty obligations were properly discharged by payments based on Commission-established rates. Williams counterclaimed for underpayment of royalty obligations in the amount of $3,731,783.79. On June 18, 1975, Shell, Pennzoil and Williams entered into a settlement agreement providing two major alternatives—one involving monetary payments, and the other involving payments of gas in kind—either being dependent on FPC authorization.

The first alternative provided that the payment of royalties would be based on the higher of the following prices: (1) 78¢ per Mcf for 1975 with annual increases of 1.5¢ per Mcf; or (2) 150% of the highest area or national rate permitted by the FPC. Pennzoil and Shell would then flow through these incremental royalty costs to their customer, United Gas Pipe Line Company. Although the FPC does not have jurisdiction over the amount paid royalty owners, *Mobil Oil Corp. v. FPC*, 149 U.S.App.D.C. 310, 463 F.2d 256 (1971), *cert. denied*, 406 U.S. 976, 92 S.Ct. 2409, 32 L.Ed.2d 676 (1972), it does have authority over interstate rates charged by the producers. *Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954); section 4 of Natural Gas Act, 15 U.S.C.A. § 717c. Thus, special relief from the ceiling rates established in FPC Opinion Nos. 598 [5] and 699 [6] is required for petitioners to pass these costs on to United.

■ The second alternative provided that in lieu of the increased monetary royalty payments, Shell and Pennzoil would deliver to Williams its royalty share of the gas in kind for sale in any market, which presumably would bring the higher intrastate prices. This second proposal would require the FPC's consent to the abandonment of that portion of gas attributable to Williams' royalty interests, as required by section 7(b) of the Natural Gas Act, 15 U.S.C.A. § 717f. *Sunray Mid-Continent Oil Co. v. FPC*, 364 U.S. 137, 153, 80 S.Ct. 1392, 4 L.Ed.2d 1623 (1960).

In FPC Opinion Nos. 753 [7] and 753–A,[8] the Commission denied either form of relief. *First*, the Commission denied it had authority to allow producers of natural gas to increase their rates above the FPC ceiling set for gas sold in interstate commerce to reflect the increased cost of "market value" or "market price" royalty obligations under existing leases. *Second*, the Commission held that "present or future public convenience or necessity" did not permit the abandonment of the royalty portion of the gas, which had been dedicated to interstate commerce by the lessees. Section 7(b) of Natural Gas Act, 15 U.S.C.A. § 717f(b). The petitions for review attack both of these decisions.

Opinion 753 defined the "real issue" in this case to be whether the FPC "can legally grant any form of rate relief above either an area or nationwide just and reasonable rate solely because the producer selling the gas in interstate commerce may be obli-

---

**4.** *Shell Oil Co. & Pennzoil Producing Co. v. Williams, Inc., et al.*, Docket No. 573–581, Civ. D.Ct., Orleans Parish, La.

**5.** *Southern Louisiana Area Rate Proceeding*, 46 FPC 86 (1971), *aff'd sub nom., Placid Oil Co. v. FPC*, 483 F.2d 880 (5th Cir. 1973), *aff'd sub nom., Mobil Oil Corp. v. FPC*, 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974).

**6.** Just and Reasonable National Rates for Sale of Natural Gas From Wells Commenced on or after January 1, 1973, and New Dedications to Interstate Commerce on or after January 1, 1973, 51 FPC 2212, *aff'd sub nom., Shell Oil Co. v. FPC*, 520 F.2d 1061 (5th Cir. 1975), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2661, 49 L.Ed.2d 394 (1976).

**7.** Opinion and Order Denying Special Relief and Abandonment, FPC Docket Nos. RI 76–8, –10 (January 30, 1976).

**8.** Opinion and Order Denying Rehearing, FPC Docket Nos. RI 76–8, –10 (February 27, 1976).

gated to make a royalty payment based not upon the regulated price the producer receives for the gas, but rather on the 'market value' of the gas." Relying on *FPC v. Texaco, Inc.*, 417 U.S. 380, 94 S.Ct. 2315, 41 L.Ed.2d 141 (1974), the Commission concluded that it was "not free to allow royalty costs, which are based on market values, to be passed on to the pipelines as just and reasonable rates."

*Texaco*, however, is inapplicable to the instant case. *Texaco* dealt with the question of the effect of *intrastate* prices of gas on *interstate* rate regulation. The Supreme Court held that the final measure of "just and reasonable" rates, mandated by sections 4 and 5 of the Act, could not be the prevailing price in the unregulated marketplace. Prompting this holding was the historical justification for general regulation of interstate prices, to prevent excessive profiteering by members of the heavily concentrated and monopolistic natural gas industry through distorted market prices. 417 U.S. at 397–398, 94 S.Ct. 2315. Thus, the Supreme Court held that other factors must be taken into consideration. 417 U.S. at 399, 94 S.Ct. 2315. This case deals with royalty cost under specific leases.

The Federal Power Commission has taken a cost plus profit approach to gas rate regulation. A cost-based methodology was approved by the Supreme Court in *Permian Basin Area Rate Cases*, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968). One of the components of a producer's costs is clearly its royalty expense, representing the amount a producer must pay to the landowner for the privilege of extracting gas from the reserves underlying his land. *Shell Oil Co. v. FPC*, 520 F.2d 1061, 1068 (5th Cir. 1975), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2661, 49 L.Ed.2d 394 (1976). This cost petitioners seek to pass through to their customer, United, through a rate increase. They do not seek to increase their profits but merely to maintain those margins already determined by the Commission to be just and reasonable in its earlier rate proceedings. Because the Commission does not have jurisdiction over the amount of royalties charged by the lessor under a natural gas lease, *Mobil Oil Corp. v. FPC*, 149 U.S. App.D.C. 310, 463 F.2d 256, 263, *cert. denied*, 406 U.S. 976, 92 S.Ct. 2409, 32 L.Ed.2d 676 (1972), the only way in which petitioners-lessees can protect themselves from loss of profits in the event of an adverse state court decision is to ask for an increase in the allowable rates to be charged their customers.

This is not to say that every additional cost must be passed through to the customer to protect a producer's level of profits. The Commission has authority to consider the reasonableness of any costs incurred. *Mobil Oil Corp. v. FPC, supra*, at 263. Determination of the reasonableness of a cost necessarily requires consideration of market price. In all probability, the reasonableness of a great many costs of gas production must be determined by the prevailing market price in an uncontrolled market. The Commission has failed to suggest why royalty costs in an uncontrolled market are any different from any other cost. *Permian* and *Shell Oil* should have been looked to for guidance by the Commission, rather than *Texaco*.

Petitioners followed the proper procedures in petitioning the Commission for special relief and were entitled to a determination of the merits of their requests. In *Mobil Oil Corp. v. FPC*, 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974), *aff'g Placid Oil Co. v. FPC*, 483 F.2d 880 (5th Cir. 1973), decided the same day as *Texaco*, the Supreme Court, in response to Mobil's complaint that the FPC failed to provide automatic adjustments in area rates to compensate for anticipated higher royalty costs, reiterated the Court of Appeals' finding that " '[i]f, as subsequent events develop, the producers are put in a bind by their royalty obligations, they may certainly petition FPC for individualized relief.' " 417 U.S. at 328, 94 S.Ct. at 2355. Pennzoil and Shell have been put in such a bind. If they lose the state court litigation, they are faced either with termination of their leases, which could divert the entire amount of gas from interstate commerce, or with in-

creased royalty payments, which would absorb funds otherwise available for exploration and development.

In denying abandonment of the royalty portion of the gas, which is allowed under section 7(b) of the Natural Gas Act only when "the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted," or when "the present or future public convenience or necessity permit such abandonment", the Commission relied on its decision in *El Paso Natural Gas Co., et al.*, FPC Opinion No. 737 (July 11, 1975), *appeal then pending sub nom., Southland Royalty Co. v. FPC*, 5 Cir., 543 F.2d 1134 (1976). The Federal Power Commission held in *El Paso* that once a fixed-term lessee dedicates gas to interstate commerce, the lessor cannot withdraw that gas from interstate commerce absent Commission approval, upon termination of the lease. Thus the Commission was under the impression that Williams' gas was trapped in the interstate market, whether or not the leases were terminated.

This Court reversed the Commission's decision in *Southland Royalty Co. v. FPC, supra*, and held that a lessee could not dedicate to interstate commerce the gas remaining at the expiration of his fixed-term lease. Thus the Commission was acting under the wrong legal premise. It is appropriate to remand this issue to the Commission for reconsideration in light of *Southland Royalty*. It may well be that the "present or future public convenience or necessity" will suggest the propriety of abandoning a fraction of the gas in Williams' property, rather than lose the entire amount from the interstate market. This decision is for the Commission.

REVERSED AND REMANDED.