FEDERAL ENERGY REGULATORY COMMISSION *v.*
PENNZOIL PRODUCING CO. ET AL.

No. 77–648.  Argued November 28, 1978—Decided January 16, 1979

WHITE, J., delivered the opinion of the Court, in which all other Members joined except STEWART and POWELL, JJ., who took no part in the consideration or decision of the case.

*Deputy Solicitor General Barnett* argued the cause for petitioner. With him on the briefs were *Solicitor General McCree, Richard A. Allen,* and *Howard E. Shapiro.*

*Jeron Stevens* argued the cause for respondent Pennzoil Producing Co. With him on the briefs were *Stephen M. Hackerman* and *John M. Young. Thomas G. Johnson* argued the cause and filed a brief for respondent Shell Oil Co. *Edwin W. Edwards,* Governor of Louisiana, *William J. Guste, Jr.,* Attorney General, *James R. Patton, Jr., David B. Robinson,* and *Harry E. Barsh, Jr.,* filed a brief for respondent State

of Louisiana. *Lee M. Huber* and *Donald R. Arnett* filed a brief for respondent United Gas Pipe Line Co. *Tom P. Hamill, Carroll L. Gilliam,* and *Philip R. Ehrenkranz* filed a memorandum for respondent Mobil Oil Corp.*

MR. JUSTICE WHITE delivered the opinion of the Court.

The major issue in this case involves the authority of the Federal Energy Regulatory Commission, petitioner herein, to grant or refuse to grant individual producers special relief from applicable area and nationwide rates set by the Commission for the sale of natural gas. The Court of Appeals for the Fifth Circuit set aside what it considered to have been the decision of the Commission that under the Natural Gas Act, 52 Stat. 821, as amended, 15 U. S. C. § 717 *et seq.*, it did not have authority to grant exceptional relief which would allow producers to pass through to interstate customers increased royalty costs based upon the intrastate price of natural gas. A secondary issue involves a question of abandonment under § 7 (b) of the Act, 15 U. S. C. § 717f (b), and an application of our decision last Term in *California* v. *Southland Royalty Co.,* 436 U. S. 519 (1978), rev'g *Southland Royalty Co.* v. *FPC,* 543 F. 2d 1134 (CA5 1976).

I

Respondent United Gas Pipe Line Co. (United) purchases for resale in the interstate market natural gas produced by respondents Pennzoil Oil Producing Co. and Shell Oil Co. (Producers) from the Gibson field in southern Louisiana. Producers' prices are subject to Commission regulation and may not exceed the just and reasonable rates established by the Commission in its relevant area and nationwide rate

---

*Anthony M. DiLeo* filed a brief for Williams, Inc., et al. as *amici curiae* urging affirmance.

*Dale M. Stucky* and *Gerrit H. Wormhoudt* filed a brief for Lawrence Lightcap et al. as *amici curiae.*

proceedings.[1] Under their lease agreements with the owner of the Gibson field, Producers pay royalties pegged to the "market value" or "market price" of the gas. After commencement of state-court litigation involving the lessor's contention that these references are to the unregulated price of natural gas in the intrastate market,[2] rather than to the applicable interstate rates set by the Commission,[3] the lessor and Producers reached a settlement agreement whereby royalty payments would be pegged to the higher of 78¢ per 1,000 cubic feet of gas (increasing 1.5¢ per year beginning in 1976) or 150% of the highest applicable interstate rate. In the alternative, Producers would abandon delivery to United of the royalty portion of the gas and deliver it instead as payment in kind to the lessor. However, this settlement would be binding only if the Commission allowed Producers to charge United a rate higher than applicable area and

---

[1] At the time of the Commission's decision in this case, the applicable rates were those prescribed by Opinion No. 598, *Area Rate Proceeding (Southern Louisiana Area)*, 46 F. P. C. 86, enf'd *sub nom. Placid Oil Co.* v. *FPC*, 483 F. 2d 880 (CA5 1973), aff'd *sub nom. Mobil Oil Corp.* v. *FPC*, 417 U. S. 283 (1974); Opinion No. 699–H, *Just and Reasonable National Rates for Sales of Natural Gas*, 52 F. P. C. 1604 (1974), aff'd *sub nom. Shell Oil Co.* v. *FPC*, 520 F. 2d 1061 (CA5 1975), cert. denied, 426 U. S. 941 (1976).

[2] The Commission takes the position that construction of such clauses is a question of federal law, and that the "market" referred to is that for interstate gas. See Brief for Petitioner 35–37, and n. 22. Compare *Lightcap* v. *Mobil Oil Corp.*, 221 Kan. 448, 562 P. 2d 1, cert. denied, 434 U. S. 876 (1977), petition for rehearing pending, No. 76–1694; and *Kingery* v. *Continental Oil Co.*, 434 F. Supp. 349 (WD Tex. 1977), with *Mobil Oil Corp.* v. *FPC*, 149 U. S. App. D. C. 310, 319–320, 463 F. 2d 256, 265–266 (1971), cert. denied, 406 U. S. 976 (1972).

[3] Under the Natural Gas Policy Act of 1978, Pub. L. 95–621, 92 Stat. 3351, all wellhead natural gas, including that dedicated to the intrastate market, that is sold after December 1, 1978, will be subject to the Act's price ceilings. However, there will remain for some time a differential between the rate prescribed for gas previously unregulated and that prescribed for gas dedicated to the interstate market.

nationwide rates by the amount of the resulting increase in royalty costs, or in the alternative, permitted the desired abandonment.[4]

The Commission referred Producers' subsequent petition for special relief, supported by intervenor United, to an Administrative Law Judge who, after a hearing, denied the petition. Under his view of applicable cases, special relief from the relevant ceiling rates, while not absolutely prohibited, would be available only if Producers demonstrated "that· [their] overall costs incurred in the operation of the particular well or group of wells are higher than the applicable Commission-established area or nationwide ceiling rates, or, even more stringently, that [their] out-of-pocket expenses will exceed revenues." App. 171. The Administrative Law Judge concluded that neither Producer had satisfied its burden of proof in this respect. Nor had it made a case for abandonment of the royalty portion of the gas.

The Commission affirmed but took a somewhat different approach.[5] Acknowledging for the purposes of this case that it had no jurisdiction over royalty rates,[6] the Commission nevertheless noted its authority to regulate the prices charged by Producers for gas sold in interstate commerce and asserted that it would be "inconsistent" with and "contrary" to its mandate to permit royalty costs to be passed on to Producers' customers if royalties were calculated on any basis other than

---

[4] In separate agreements, United consented to make the additional payments or to release the royalty gas, pursuant to Commission approval.

[5] The Commission framed the issue before it as "whether [the Commission] can legally grant any form of rate relief above either an area or nationwide just and reasonable rate solely because the producer selling the gas in interstate commerce *may* be obligated to make a royalty payment based not upon the regulated price the producer receives for the gas, but rather on the 'market value' of the gas." 55 F. P. C. 400, 404 (1976).

[6] See *Mobil Oil Corp.* v. *FPC*, 149 U. S. App. D. C. 310, 463 F. 2d 256 (1971), cert. denied, 406 U. S. 976 (1972).

the just and reasonable rate for the gas involved. Relying in part on our decision in *FPC* v. *Texaco Inc.*, 417 U. S. 380 (1974), the Commission concluded that it was "not free" to allow royalty costs based on the value of the gas in an unregulated market. 55 F. P. C. 400, 404–405 (1976).[7] In an opinion and order denying rehearing, the Commission said that it "does not have the power to base a part of the regulated price on the unregulated market value of intrastate gas."[8] Price relief was thus denied without accepting or rejecting the findings of the Administrative Law Judge with respect to the relationship between the Producers' costs and

---

[7] The Commission said:

"In the instant proceeding, the impetus of the settlement is the market value of the royalties and no consideration has been given to regulated rates. As such, we cannot permit any incremental royalty costs resulting from this settlement, or resulting from any judgment by a state court regarding royalty payments, to be passed on to the pipeline if these incremental royalty costs are based on any other factors than the regulated just and reasonable rate. On this point, we note the Supreme Court's warning in *FPC* v. *Texaco* . . . that the Commission is not free to equate just and reasonable rates with the prices for gas in the marketplace. Accordingly, we believe that we are not free to allow royalty costs, which are based on market values, to be passed on to the pipelines as just and reasonable rates. A contrary result would not '. . . afford customers a complete, permanent, and effective bond of protection from excessive rates and charges.'" 55 F. P. C., at 405.

[8] 55 F. P. C. 901 (1976). The Commission also explained:

"In arriving at the national rates costs of production were used and royalties were computed at 16 percent of total costs. . . . It is for these reasons that the Commission is not free to allow royalty costs, which are based on market values, to be passed on to the pipelines as just and reasonable rates." *Id.*, at 902.

In separately denying the petition for rehearing filed by another litigant, the Commission observed that in setting area rates, an allowance for royalty costs "would depend on the royalties generally being paid in the area," but this did not mean that an "individual producer's rates should be increased because it must pay a higher royalty, particularly one based on market value." 55 F. P. C. 1377, 1379 (1976).

revenues. The Commission also denied the alternative request for abandonment of the royalty portion of the gas.

The Court of Appeals rejected the Commission's determination that it was without authority to allow producers of natural gas to increase their rates above applicable area and nationwide rates in order "to reflect the increased cost of 'market value' or 'market price' royalty obligations." *Pennzoil Producing Co.* v. *FPC*, 553 F. 2d 485, 487 (CA5 1977). Asserting that the Commission "has taken a cost plus profit approach to gas rate regulation," the Court of Appeals believed that in seeking to pass through their increased royalty expense, Producers "do not seek to increase their profits but merely to maintain those margins already determined by the Commission to be just and reasonable." *Id.*, at 488. The Commission had "authority to consider the reasonableness of any costs incurred," but doing so "necessarily requires consideration of market price," and the Commission had failed to explain why royalty costs in an unregulated market are different from any other cost of production. *Ibid.* The court concluded that these considerations and our decision in *Mobil Oil Corp.* v. *FPC*, 417 U. S. 283 (1974), entitled the Producers to a "determination of the merits" of their request for special relief for the applicable area and nationwide rates. 553 F. 2d, at 488.

Based on its opinion and judgment in *Southland Royalty Co.* v. *FPC*, 543 F. 2d 1134 (CA5 1976), the Court of Appeals also disagreed with the Commission on the abandonment issue.

## II

If the Commission's opinion is to be read as holding that granting an individual producer a rate increase at variance with the established area or national rate in order to accommodate an increase in royalty costs is forbidden by the Act under any circumstance, the Court of Appeals was surely correct in disagreeing with the Commission. In *Permian*

*Basin Area Rate Cases,* 390 U. S. 747 (1968), the Commission urged that "nothing in the Constitution or in the Natural Gas Act require[s] the Commission to provide exceptions to the area rates," at least so long as the Commission permitted abandonment when costs exceed revenues, but it nevertheless pointed out that it had established a procedure whereby individual producers may seek relief from the applicable area rate. Brief for the FPC, O. T. 1967, Nos. 90 et al., p. 64. Similarly, in *Mobil Oil Corp.* v. *FPC, supra,* the Commission, responding to the possibility of certain producers facing higher royalty payments than the fixed percentage of total costs used by the Commission in setting the area rates, stated—in agreement with the Court of Appeals—that "the issue is hypothetical at this stage and that if it becomes a reality producers may seek special relief from the Commission" Brief for Respondent FPC, O. T. 1973, Nos. 73–437 et al., p. 62. This Court proceeded on a similar assumption, saying that "in any event an affected producer is entitled to seek individualized relief." 417 U. S., at 328.

None of the foregoing is consistent with the proposition that the Commission is totally without power to give special relief to individual producers whose escalating royalty costs place them in an untenable position. In view of the scope of the discretion vested in the Commission to establish just and reasonable rates consistent with the public interest, we could not hold that the Act forbids special relief from area rates to accommodate increased royalty costs regardless of the circumstances.

Nor do we understand the Commission in this Court to deny its jurisdiction to extend such relief in proper situations. Indeed, in its brief before this Court the Commission states that "with the approval of the courts, [it] has established the policy that it will not authorize departures from area rates unless a producer can show that its costs exceed its revenues at the area rate. See, *e. g.,* Op. No. 699, 51 F. P. C. 2212,

2279, aff'd, *Shell Oil Co.* v. *Federal Power Commission,* 520 F. 2d 1061 (C. A. 5), certiorari denied, 426 U. S. 941." Brief for Petitioner 34. The Commission does not suggest that this policy is generally inapplicable to cases seeking relief because of escalating royalty costs.

Nevertheless, the Commission's initial opinion and its opinion denying rehearing indicated that it is "not free" and that "it does not have the power" to give individualized relief where escalating royalty costs are a function of, or are otherwise based upon,[9] an unregulated market price for the product the sale of which in the interstate market is regulated by the Commission. Erroneously, we think, the Commission sought support for these conclusions in *Texaco,* 417 U. S., at 399, where we reminded the Commission that "[i]n subjecting producers to regulation because of anticompetitive conditions in the industry, Congress could not have assumed that 'just and reasonable' rates could conclusively be determined by reference to market price." We did not, however, hold, as suggested by the Commission, that it "has no authority to permit rate increases based on royalty costs tied to the unregulated market for natural gas." Brief for Petitioner 13; see also *id.,* at 16, 19, 21. Our concern in *Texaco* was that rates of small producers might be totally exempted from the Act, and we did not indicate that producer or pipeline rates would be *per se* unjust and unreasonable because related to the unregulated price of natural gas. *Texaco* did not purport to circumscribe so severely the Commission's discretion to decide what formulas and methods it will employ to ensure just and reasonable rates. Indeed, the decision underscored the wide

---

[9] The increasing rates provided for in the tentative settlement between United and Producers in this case, while formally pegged to the higher of the regulated rate or a specific price, are based upon unregulated market prices in that, as the Commission noted, 55 F. P. C., at 405, "the impetus of the settlement is the [unregulated] market value of the royalties."

discretion vested in the Commission. See 417 U. S., at 387–393.

### III

We are also convinced, however, that the Court of Appeals trenched upon the ratemaking authority vested in the Commission when it strongly suggested that the Commission is required to grant the relief Producers request in this case so long as the increase in royalty costs is not imprudent and the relief, when granted, will merely sustain rather than increase Producers' profits.

Sections 4 and 5 of the Natural Gas Act, 15 U. S. C. §§ 717c and 717d, mandate the Commission to set just and reasonable rates for the sale of interstate natural gas. In sustaining the Commission's authority to establish maximum rates on an areawide basis, we noted that "courts are without authority to set aside any rate adopted by the Commission which is within a 'zone of reasonableness,' " *Permian Basin Area Rate Cases, supra,* at 797. Moreover, in arriving at just and reasonable rates "no single method need be followed." *Wisconsin* v. *FPC,* 373 U. S. 294, 309 (1963). Specifically, the Commission is not required to adhere "rigidly to a cost-based determination of rates, much less to one that base[s] each producer's rates on his own costs." *Mobil Oil,* 417 U. S., at 308. While recognizing that under an areawide approach, " 'high cost operators may be more seriously affected . . . than others,' " *Permian Basin, supra,* at 769, quoting *Bowles* v. *Willingham,* 321 U. S. 503, 518 (1944), we refused to invalidate as inadequate the Commission's proposal to provide special relief when a producer's " 'out of pocket expenses in connection with the operation of a particular well' exceed[s] its revenue from the well under the applicable area price," 390 U. S., at 770–771.

The Court of Appeals proceeded from the proposition that "[a] cost-based methodology was approved" in *Permian Basin,* to the implicit conclusion that the Commission is required to

allow producers to maintain whatever profit margins they enjoyed under area or national rates, and that therefore it must grant special relief from these rates for all reasonable cost increases, emphasizing that a cost is not unreasonable simply because it is based on an unregulated market price. It must be noted, however, that the methodology employed by the Commission in arriving at the area rates approved in *Permian Basin* was not a purely cost-plus approach. To the contrary, the Court recognized "deviation[s] from cost-based pricing" which it "found not to be unreasonable and to be consistent with the Commission's responsibility to consider not merely the interests of the producers . . . but also 'the relevant public interests' . . . ." *Mobil Oil, supra,* at 308–309, quoting *Permian Basin,* 390 U. S., at 792. Furthermore, the notion that the Commission is required to maintain, or even allowed to maintain to the exclusion of other considerations, the profit margin of any particular producer is incompatible not only with the specific area approach to natural gas regulation approved in *Permian Basin* and *Mobil Oil* but also with a basic precept of rate regulation. "The fixing of prices, like other applications of the police power, may reduce the value of the property which is being regulated. But the fact that the value is reduced does not mean that the regulation is invalid." *FPC* v. *Hope Natural Gas Co.,* 320 U. S. 591, 601 (1944). The Commission is not required by the Act to grant special relief from area or nationwide rates simply because the costs of an individual producer increase and his profits decline.

Given the wide discretion of the Commission to refuse exceptional relief, we are somewhat unsure of the meaning of the Court of Appeals' statement that respondents in this case "were entitled to a determination of the merits of their requests." 553 F. 2d, at 488. We think that the Court of Appeals read too much into our statement in *Mobil Oil* that a producer with rising royalty costs "is entitled to seek individualized relief." 417 U. S., at 328. We did not there suggest

that the Commission must be prepared to grant such relief in order to forestall declining profits. Indeed, we rejected the claim that the Commission must "provide automatic adjustments in area rates to compensate for anticipated higher royalty costs." *Ibid.* Moreover, in *Texaco,* decided the same day as *Mobil,* we faced the issue whether the Commission had acted arbitrarily in failing to provide relief from the bind that pipelines and large producers might be put in if direct regulation of small producers were eliminated, a bind similar to that in which respondent Producers may find themselves if their royalty costs increase. We concluded in *Texaco:*

> "[R]equiring pipelines and the large producers to assume the risk in bargaining for reasonable prices from small producers is within the Commission's discretion in working out the balance of the interests . . . involved." 417 U. S., at 392.

Likewise, the Commission is under no obligation automatically to relieve the bind on producers facing increased royalty costs based on unregulated prices. "All that is protected against, in a constitutional sense, is that the rates fixed by the Commission be higher than a confiscatory level." *Id.,* at 391–392. The Commission would not exceed its statutory authority if, in its view of the public interest, it determines to reject requests for special relief presenting no colorable claim that the applicable area or nationwide rate is confiscatory or, what may amount to the same thing,[10] outside the "zone of reasonableness," *Permian Basin, supra,* at 797; *FPC* v. *Natural Gas Pipeline Co.,* 315 U. S. 575, 585 (1942).

## IV

Although we hold that the Court of Appeals too narrowly confined the Commission's functions and judgment on remand, we agree that the case should be returned to the Commission.

---

[10] See *Mobil Oil,* 417 U. S., at 316; *Permian Basin Area Rate Cases,* 390 U. S. 747, 769–770 (1968).

As we have said, despite the indications to the contrary in its opinions below and despite its failure to address the Administrative Law Judge's findings with respect to Producers' proof as to their costs and revenues, the Commission does not seem to take the position here that it is totally without power to grant individual relief from area rates in recognition of increased royalty costs and that the relationship between the individual producer's costs and revenues in such a proceeding is totally irrelevant. Expressing its adherence to the policy approved in *Shell Oil Co.* v. *FPC,* 520 F. 2d 1061 (CA5 1975), cert. denied, 426 U. S. 941 (1976), the Commission points to the findings of the Administrative Law Judge that Producers in this case failed to make any showing that their costs exceed revenues. See Brief for Petitioner 34-35. At the same time, however, the Commission disaffirms any suggestion that its order be sustained on a ground that it did not itself rely upon. *Id.,* at 34. The agency's reluctance is understandable, see *Texaco,* 417 U. S., at 395-397; *Burlington Truck Lines* v. *United States,* 371 U. S. 156, 168-169 (1962); *SEC* v. *Chenery Corp.,* 332 U. S. 194, 196 (1947). The upshot is that, given this state of the record, a remand to the Commission is the proper course in order that the Commission in the first instance may clearly enunciate whether and to what extent individual relief from area rates will be granted due to the increased royalty costs that are or may be involved in this case, and, if relief is to be denied, that it may make an adequate explanation of its judgment. Cf. *Burlington Truck Lines, supra,* at 167-168. If, as the Commission perhaps now suggests, the policy set forth in *Shell Oil* is the policy to be followed in cases such as this, the Commission should proceed to complete its task of reviewing and sustaining or rejecting the findings of the Administrative Law Judge.

V

With respect to the issue of abandonment, it is apparent that to the extent that the Court of Appeals relied upon its

judgment in the *Southland* case, it was in error since that judgment was reversed here. It also appears to us, however, that the question of individual rate relief and that of abandonment are not unrelated. If the Commission were to take the position that relief from area rates to accommodate royalty costs tied to intrastate rates is unavailable regardless of the relationship between costs and revenues, it may be that the issue of abandonment would appear in a different light. Cf. *Permian Basin,* 390 U. S., at 770–771. In any event, it is the better part of wisdom to vacate the judgment of the Court of Appeals and to remand the case to that court with directions to return the entire case to the Commission for further appropriate proceedings.

*So ordered.*

MR. JUSTICE STEWART and MR. JUSTICE POWELL took no part in the consideration or decision of this case.