George M. **AGURS**

v.

**AMOCO PRODUCTION COMPANY.**

Civ. A. No. 781358.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Nov. 19, 1979.

---

Tucker, Martin, Holder, Jeter & Jackson, Shreveport, La., for plaintiff.

Blanchard, Walker, O'Quin & Walker, Shreveport, La., for defendant.

## MEMORANDUM RULING ON MOTION FOR SUMMARY JUDGMENT

EDWIN F. HUNTER, Jr., Senior District Judge:

More than 22 years have passed since the Supreme Court determined that natural gas producers are subject to federal rate regulation. The effect that regulation is to have on landowner's royalty interests has only recently received judicial attention. State cases were held in abeyance while producers and others conducted the litigation resulting in *Mobil Oil Co. v. F. P. C.*, 149 U.S.App.D.C. 310, 463 F.2d 256 (D.C. Cir., 1972), *cert. denied* 406 U.S. 976, 92 S.Ct. 2409, 32 L.Ed.2d 676. The end result of *Mobil*, and later *Placid*,[1] left it open to the courts, state and federal, to determine lease controversies between royalty owners and producers.

Counsel agree that "market value" is to be determined by Louisiana law based on the terms of the lease. The jurisprudence seems to be uniform that the existence of federal regulation fixing the maximum rate a gas producer may receive from its purchaser is absolutely no obstacle to the fixing of a higher rate as the "market value" of gas for the purpose of computing royalties.[2]

A recent court decision indicates that a producer may be able to obtain rate relief, at least prospectively, and that the apparent hardship potentially present may not be so severe as one might contemplate.[3]

Plaintiff is convinced that the decisions of the Supreme Court of Louisiana leave no doubt as to the appropriate interpretation of gas provisions requiring royalties to be paid according to "market price" or "market value." We do not find the answer so easy. The *Wall, Hall, Harris, Tyson* and *Sartor* cases do not provide a definitive answer. Counsel for plaintiff agrees that if there is no evidentiary basis for determining "market value," then F.P.C. regulated sales might be relevant to determine "actual" or "intrinsic value" in accordance with his alternative claim. This is a possibility we must face in the instant case. Arguably, no present sales are made on a hypothetical free market. Theoretical transactions to determine "market value" under state law may require reference to the presence of federal regulation. We understand defendant's argument that under Louisiana law the only sales that are comparable for the determination of the market value of gas produced from the Agurs Well are interstate sales of gas of the same vintage as the gas produced from the Agurs field. We are cognizant of plaintiff's characterization of that argument as a distortion which disregards the fact that the definition in *Wall* speaks of "goods bought and sold in the ordinary course of trade," and that F.P.C. regulated sales have no relevancy whatsoever to market value.

The principal thrust of defendant's motion for partial summary judgment is that the application of Louisiana law regarding market value determination requires that the court conduct a comparability test by reference *only* to other sales of natural gas in the Greenwood-Waskom

---

1. *Placid Oil v. F. P. C.*, 483 F.2d 880 (5th Cir. 1973), aff'd. sub nom. 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974).

2. The significance of the *Mobil* court's dicta is far from clear:
   "[W]e can certainly visualize the possibility that a court confronted with a contention of entitlement to a market price basis higher than the producer's ceiling would consider it to run counter to the intention of the parties, unless there is something to rebut the fair presumption that they contemplated interstate movement and market prices compatible therewith."

3. *Pennzoil Producing Co. v. F. P. C.*, 553 F.2d 485 (5th Cir. 1977); 439 U.S. 508, 99 S.Ct. 765, 58 L.Ed.2d 773 (1979).

Field that are comparable to the sale of gas from the Agurs Well. The defendant's argument is that the application of this comparability test would result, as a matter of law, in the Court's exclusion of all other sales because "the only sales that are comparable are other interstate sales of natural gas in the Greenwood-Waskom Field."

The granting of the motion would foreclose the most significant issue left open with respect to "market value." What sources of evidence will be admissible? *Perhaps* the Louisiana Supreme Court will decide when gas is irrevocably and completely dedicated to interstate commerce; the only relevant market for the purpose of determining royalty value is the interstate market. We will wait and see.

Summary judgment is not appropriate in this important litigation. Every factor possibly bearing upon the establishment of "market value" will be considered. We will receive evidence of both interstate and intrastate sales in Northwest Louisiana.

In light of the pervasive effect of federal regulation, the OPEC cartel and recent state legislation, a theoretical computation of the *free* "market value" of natural gas in Louisiana will present a formidable undertaking.

The motion for Summary Judgment should be denied. It is.